IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:25-CV-799-RJ

JOEY STRANGE,

Plaintiff/Claimant,

v.

FRANK BISIGNANO,
*Commissioner of Social Security*,

Defendant.

ORDER

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-12, -18]. Claimant Joey Strange ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is reversed and the matter is remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on September 25, 2020, alleging disability beginning November 1, 2019. (R. 220–27). The claim was denied initially and upon reconsideration. (R. 91–116). A hearing before an Administrative Law Judge ("ALJ") was held on July 6, 2023, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 37–67). An additional hearing was held before the same ALJ on April 11, 2024. (68–90). On April 24, 2024, the ALJ issued a decision denying Claimant's request for benefits, (R. 14–36), and the Appeals Council denied Claimant's request for review, (R.

1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set

forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date of November 1, 2019. (R. 19). Next, at step two, the ALJ determined Claimant had the severe impairments of anxiety; migraines; primary insomnia; degenerative disc disease of the lumbar spine; major depressive disorder; PTSD; and sequela from

an unspecified injury of the head. *Id.* The ALJ also found that Claimant's remote history of a stroke in 2014; unspecified visual disturbance; alcohol use disorder; benign prostatic hyperplasia; frequent urination; and erectile dysfunction are not severe impairments. (R. 19–20). The ALJ determined Claimant had no medically determinable seizure disorder. (R. 20). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20–21). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information; in concentrating, persisting, or maintaining pace; in interacting with others; and in adapting or managing oneself. (R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform medium work[1] with the following limitations:

> [T]he claimant can lift and/or carry 50 pounds occasionally, 25 pounds frequently. The claimant can stand or walk for 6 hours and sit for 6 hours in an 8-hour workday with customary breaks. The claimant cannot climb ladders, ropes, or scaffolds, work at unprotected heights, or operate hazardous moving equipment. The claimant can frequently stoop and crouch, occasionally kneel, and never crawl. The claimant can have no noise above loud noise on the following continuum: very quiet, quiet, moderate, loud, very loud. The claimant can perform no overhead work. The claimant is limited to simple routine tasks with occasional changes in work setting or duties and occasional public interaction.

(R. 22–28). In making this assessment, the ALJ found the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence or other evidence in the record. (R. 22). At step four, the ALJ concluded Claimant was unable to perform his past relevant work. (R. 28–29). At step five, upon considering

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, they can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 29–30).

## V. DISCUSSION

Claimant contends the ALJ erred in formulating his RFC by (1) failing to account for the vocationally limiting effects of his migraines; (2) forming the determination without any support from medical opinion evidence; and (3) failing to adequately account for Claimant's psychological limitations. Pl.'s Br. [DE-12] at 5–20. The Commissioner contends (1) there was no error in the ALJ's evaluation of Claimant's migraines; (2) there are no regulations or applicable precedent that require an RFC determination be supported by medical opinion evidence; and (3) the ALJ's decision sufficiently explains why she found the particular mental limitations that she did. Def.'s Br. [DE-18] at 6–14.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the

evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

**A. Claimant's Migraine Headaches**

At step two the ALJ found Claimant's migraines to be a medically determinable severe impairment. (R. 19). Claimant asserts that despite this finding the ALJ failed to account for the vocationally limiting effects of Claimant's migraine's in formulating the RFC. Pl.'s Br. [DE-12] at 5. In the RFC determination the ALJ referenced Claimant's migraines several times. (R. 22–27). At a December 2021 office visit with Nurse Practitioner Terra Kamp ("NP Kamp"), at Midatlantic Neurology, Claimant reported having constant pressure headaches. (R. 23, 536). NP Kamp ordered an MRI of Claimant's brain and an MRA of his head, both having unremarkable results. (R. 24, 537, 587–90, 669). Claimant did not follow up with NP Kamp until September 2022, this time at Coastal Headache Clinic, complaining of chronic migraines and insomnia. (R. 24, 669). NP Kamp started Claimant on medications for his migraines, including Elavil as a preventative medication and Ubrelvy as an abortive medication. (R. 24, 670). The following month Claimant also started monthly Emgality injections to prevent migraines. (R. 24, 668). In December 2022, Claimant reported some improvement and was started on Botox injections the following month. (R. 24, 666). Following this medication adjustment, he reported having one or

two headaches a week, Ubrelvy working well for his breakthrough migraines, and having migraines towards the end of the month after his Emgality injection started to wear off and at the end of a Botox cycle. (R. 24, 745, 747).

Claimant asserts the ALJ's findings regarding his migraines, although correct in noting his relative improvement, fails to consider the continued disabling-frequency he suffered migraines, particularly by overlooking Claimant's hearing testimony. Pl.'s Br. [DE-12] at 5. At the first hearing Claimant testified that he had less frequent migraines, but at some point, he was having them several times a month, sometimes for days on end. (R. 52). When asked to clarify Claimant testified he was currently having mild headaches "a couple times a month, and the bad ones, maybe twice a month." (R. 53). Claimant described his bad headaches as debilitating, stating he can't open his eyes or listen to anything, but that instead he must lie in bed and hope it goes away. *Id.* He testified his typical migraine would last about three days. *Id.* At the supplemental hearing Claimant testified he gets cluster headaches a couple times a week, but not every week, and then another type of migraine that is debilitating. (R. 75). He further asserted he has had three migraines a week, for the last fifteen months, and that they usually last a day or two. *Id.* Claimant argues that his migraines are disabling based on his hearing testimony and the VE testimony that being off-task for more than 10% of the workday or missing two or more days of work per month would eliminate competitive employment. Pl.'s Br. [DE-12] at 5.

Despite Claimant's testimony that he continued to suffer from about four headaches a month, two being severe, the ALJ did not make any specific findings regarding time off-task or absences. Claimant contends the RFC contains no limitations to account for his migraines, and the ALJ's discussion does not indicate why no such limitations were included. Pl.'s Br. [DE-12] at 7–8. The Commissioner asserts the ALJ made no error as she considered Claimant's migraines

when determining the RFC. Def.'s Br. [DE-18] at 8 (citing R. 27). The Commissioner notes the ALJ found Claimant's "migraines had some impact on his ability to perform work, but reasonably found that he was not totally debilitated or disabled." *Id.* However, "[t]o enable meaningful judicial review, '[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Woody v. Kijakazi*, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

Even if the ALJ did not find any of Claimant's testimony to be credible, considering the ALJ noted Claimant's testimony was not entirely consistent with the record evidence, (R. 22), by the ALJ's own account of the record evidence Claimant still generally had a few headaches a week. (R. 24) ("He generally has only a few headaches a week, not daily."). In *Woody v. Kijakazi*, the Fourth Circuit remanded the case because the ALJ failed to make specific factual findings as to whether the claimant's migraines were still severe enough to cause her to miss work, despite the fact they had become less severe with treatment. 2023 WL 5745359, at *1. Here, the ALJ noted Claimant's migraines had significantly improved with treatment, in severity and frequency, but that Claimant continues to suffer from migraines regularly. (R. 24). Due to the lack of a narrative discussion concerning whether Claimant's migraines may still be disabling, despite his relative improvement, meaningful review is frustrated. *See Mascio*, 780 F.3d at 636 ("the [RFC] 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)'" (quoting SSR 96–8p)). Therefore, the matter is remanded for further proceedings. Given the need for remand on this issue alone, the court declines to address the remaining assertions of error.

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is reversed and the matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

So ordered, this the 21 day of September 2026.

Robert B. Jones, Jr.
United States Magistrate Judge